[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The issue presented by this administrative appeal is whether the defendant Zoning Board of Appeals (Board) acted arbitrarily, illegally and unreasonably in upholding the decisions of the Zoning Enforcement Officer (ZEO). CT Page 412
The Court will consider both appeals. The first appeal is from the Board's decision to uphold the ZEO's decision to deny the plaintiff's request for a permit to construct a second story on their home (Appeal I). The second appeal is from the Board's decision to uphold the cease and desist order of the ZEO (Appeal II).
The plaintiffs own and occupy a single-family home which is located on a parcel of land which the plaintiff's lease from Latimer Point Management Corp. (LPMC). The parcel of land contains 7840 square feet and is one of 74 parts of a
It is unclear from the records as to the zoning of the subject lot. The records are conflicting, however, since the briefs of both parties assumed that the regulations for RM-20 zones are applicable, the Court will also apply those regulations in its discussions and decision in this matter.
The record also indicates that there has never been an official or legal subdivision of the 74 parcels which are currently being leased.
Previous owners of the plaintiff's home had obtained a permit to change the roof line. No mechanical work was indicated on the permit. Three renewals of the permit were granted. The plaintiffs obtained a renewal permit in 1987, just after they had purchased the home.
Armed with this renewal permit, the plaintiffs installed dormers, plumbing and electrical wiring. Upon completion of the work in May 1988, they called for plumbing, electrical and framing inspection. The building inspector approved almost all of the work. Subsequently, the plaintiffs were issued a stop work order for failure to have the proper permit. Approximately one year later, the plaintiffs applied for a permit to construct a second story. The ZEO denied the request because the new floor area would exceed the allowable floor area ratio thereby intensifying a nonconformity. Three months later the ZEO issued a cease and desist order citing violations of the Zoning Regulations. That order was retracted and another issued which stated that the plaintiffs expanded the nonconforming bulk by adding a second story to an existing nonconforming residence without benefit of a zoning and/or building permit. The plaintiffs were ordered to discontinue using the second story as habitable space and to remove the plumbing, electrical improvements, dormers and second story deck.
The plaintiffs then appealed the denial of the permit and the cease and desist order. The Board upheld the CT Page 413 ZEO with no reasons specified for either decision.
Since the plaintiffs own the house at issue, they are aggrieved parties. Further, the Court finds that the filing of these appeals was timely.
It is axiomatic that the scope of judicial review is limited in zoning appeals. Horn v. Zoning Board of Appeals,18 Conn. App. 674, 676 (1989).
A zoning board need not state its reasons for a decision. Calandro v. Zoning Commission, 176 Conn. 439, 441
(1979). Where the zoning commission fails to state its reasons, the trial court is required to search the record to find a basis for the action taken. A. P. and W. Holding Corp. v. Planning and Zoning Board, 167 Conn. 182, 186 (1974).
Before addressing the merits of the appeal, the Court will note for the record that neither party submitted briefs on the appeal from the denial of the permit. Briefs were submitted only on the appeal from the cease and desist order. Accordingly, no references are made to the return of record of Appeal I.
The Court is aware of the requirement of Practice Book Section 84, which allows consolidation for the purposes of trial and that consolidated cases retain separate files and documentation.
Generally, an assignment of error to be pursued must be briefed to avoid an injustice and hardship on the adverse party. Cushing v. Salmon, 148 Conn. 631, 633, 173 A.2d 543
(1961). It has been held that "(i)ssues not briefed are considered abandoned." State v. Ramsundar, 204 Conn. 4, 16,526 A.2d 1311 (1987). However, since the appeals were consolidated, since briefs were submitted on one of the appeals, and since the facts and issues in the two appeals are virtually identical, no injustice or hardship would result if the briefs were taken as submitted for both appeals.
The plaintiffs argue that the Town should be estopped from enforcing its own Zoning Regulations. The Town's approval of the transferred permit allowing the change of the roof line was accompanied by a drawing showing dormers or windows to be added. Further, the Town's Building Inspector approved all of the new construction. Defendant contends that the record does not support any inducement by the Town. No evidence was presented as to the actual existence of any diagram other than the plaintiffs' own testimony. Further, the record indicates that the permit was only for a roof line CT Page 414 change and not for any mechanical work.
The second argument the plaintiffs make is that the ZEO incorrectly applied the floor area ratio and side yard set back requirement to the property. Since there is no street or lot as defined in the Zoning Regulations, it is impossible for there to be a set back violation. They argue further that as to the floor area requirement, calculations should be based on the entire unsubdivided 45-acre parcel and the sum of the floor areas of all buildings or structures located on the parcel. (emphasis added.)
The defendant asserts that the record amply supports the view that the property owned by one entity is divided into 74 individual lots and since the interpretation of zoning regulations is one of the statutory functions entrusted to zoning boards, its determination should stand.
The final argument which the plaintiff makes is that the Board acted upon an erroneous belief that a court order prevented the Town from issuing any variances or granting any other relief on the subject parcel.
Defendant argues that nowhere in the record is there any support that the Board was in any way influenced by an erroneous belief in making its decisions.
The Court finds that the plaintiffs have failed to prove the essential elements of estoppel. In municipal zoning cases, "estoppel may be invoked `(1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations.'" West Hartford v. Rachel, 190 Conn. 114, 121, 459 A.2d 1015 (1983) (quoting Zoning Commission v. Lescynski, 188 Conn. 724, 732,453 A.2d 1144 (1982).
 Any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury.
The plaintiffs have failed to prove any statements or acts on the part of the Town calculated to induce them to CT Page 415 believe that their property was in compliance with the Zoning Regulations. Further, even assuming, arguendo, that the building inspectors were aware of violations, awareness should not be confused with inducement to create a violation. See West Hartford v. Gelinas, 18 Conn. App. 688, 691 (1989).
There is a problem with attempting to apply the Zoning Regulations to the subject parcel. The parties all agree that the subject parcel has never been subdivided. Certainly, the Zoning Regulations do not contemplate the construction of 74 houses on one legal lot and the leasing of 74 unofficial divisions of the legal lot to 74 separate homeowners. Since neither party has raised the issue nor has it been briefed, the Court proceeds on the leases that the Regulations apply to the 45-acre lot as a whole and not to each leased parcel. Although the plaintiffs have shown that the ZEO and the Board have incorrectly applied the floor area ratio and set back requirements, nonetheless, the misapplication is not dispositive of the appeal. There is ample evidence in the record supporting the decision of the Board.
Further, the record contains a discussion where the chairperson of the Board explained that until a subdivision is approved, variances must be granted for all work to be done on Latimer Point. The record contains no evidence that the Board acted on an erroneous belief that there was a court order enjoining the Town from issuing any variances. On the contrary, the record shows otherwise.
Although the Board did not specify its reasons for its decision, nonetheless, the record amply shows that the basis of its decision is that the permit, if granted, would intensify a nonconformity in violation of Section 2.12 of the Zoning Regulations.
Section 2.12 of the Zoning Regulations provides that "nonconforming uses and bulk may be continued but may not be intensified or expanded in area, height, amount of use, or extent of bulk." Record II, Exhibit IK, p. 21. Section 3.51 provides that the minimum lot area must be 20,000 square feet. "(R)egulations. . .must be construed with common sense and to reach a rational result." Plastic Distribution, Inc. v. Burns,5 Conn. App. 219, 228, 497 A.2d 1005 (1985). While Section 3.51 does not specifically state that 20,000 square feet is the minimum lot area per dwelling unit, it is found that it must be read with the definition of bulk as provided in Section 1.32.12 and Section 3.52. Under Section 1.32.12, "bulk" is defined as the "size and shape of buildings. . .and the physical relationships of. . .their location to. . .other CT Page 416 buildings. . . . Bulk Regulations include regulations dealing with. . .lot area per dwelling unit." Under Section 3.52, one permitted use is a single-family residence. Read together, in order to acquire a rational result, Section 3.51 must be read as meaning that there may only be one single residence per legal lot.
The bulk requirement has not been met. There are 74 single-family residences on one 45-acre lot. Even if the leased parcel is regarded as the legal lot, the plaintiffs' home stands on a parcel of land containing only about 7840 square feet. Other single-family dwellings stand on land surrounding the plaintiffs' home. There, therefore, exists a nonconforming bulk which may not be expanded in the amount of use prohibited by Section 2.12. Installation of plumbing and electricity would intensify the use.
The record amply supports the Board's decisions. There was a prohibited expansion of the nonconforming bulk and, therefore, the decision was not unreasonable, arbitrary or an abuse of discretion.
Briefly, on the second appeal, the Board again did not specify its reason for its decision to uphold the cease and desist order. The record, however, indicates that no permit was ever issued for the installation of plumbing and electrical wiring.
Since the record indicates no electrical or plumbing permits were ever issued, the denial of the permit was not unreasonable, arbitrary or in abuse of the Board's decision.
The appeals are dismissed.
MIHALAKOS, J.